22 C. C. P. A. (Patents)

## HERSHEY v. HARRIS.

### Patent Appeal No. 3494.

Court of Customs and Patent Appeals.

June 10, 1935.

Charles W. Hills, Alexander C. Mabee, and T. J. MacKavanagh, all of Chicago, Ill., for appellant.

George H. Willits, of Detroit, Mich., and Hugh Keneipp, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an interference proceeding originating in the United States Patent Office which involves a single count, which count corresponds to a claim originating in the Harris application. Harris filed his application on August 28, 1924, approximately nine months prior to Hershey's filing date which was June 1, 1925.

The count reads as follows: "In combination, a control member, an oscillatable and axially movable bolt for locking the control member, means for locking the bolt against both oscillation and axial movement when in locking engagement with said member, said bolt being axially movable to unlocking position in which it is capable of oscillation, and an electric switch opened and closed by oscillation of the bolt when in said last-named position."

There is no question about the right of the party Hershey to make the count.

The invention relates to a so-called two-stage type of lock in which the ignition switch can be turned off or on, as desired, without locking some moving part of the car, such as the steering mechanism in the Hershey application and the transmission in the Harris application. The invention at bar is directed to a lock which comprises a bolt having a reciprocating action and which acts upon a control member such as the steering post or clutch. When reciprocated out of engagement with the control member, it is adapted to be oscillated for acting upon the ignition system.

Both parties took testimony. The record is long and contains the evidence of numerous witnesses on both sides, together with a great number of lock exhibits and printed exhibits, as well as a number of stipulations as to facts.

All the testimony has been summed up in great detail by the Examiner of Interferences as well as by the Board of Appeals, and while these tribunals made findings on issues which we do not regard as essential for us to pass upon, we find ourselves in complete agreement with the reasoning of the Board of Appeals (which is not materially different from that of the Examiner of Interferences) on the controlling issue, which we will pass upon, as to what the evidence proved, and the effect of such proof. We think it necessary for us to refer to some phases of this evidence, but we do not regard it as necessary for us to repeat here all that has been well stated by the tribunals below.

Hershey rests his case here almost entirely upon the contention that his proof shows that Hershey's Exhibit No. 1, which

embodies the invention defined in the count, was constructed and tested in June, 1924, which was prior to the filing date of Harris. If this fact was established, then a finding would be required here as to the conception dates of the parties and possibly the question of diligence. Both tribunals below, however, found that the record did not prove satisfactorily that Exhibit 1 was ever constructed or properly tested prior to Harris' filing date, and that if Exhibit 1 had not been constructed at that time there was no proof of conception or reduction to practice on the part of Hershey prior to the filing date of Harris.

In this court Hershey urges the importance and weight of the testimony of his witnesses. He did not introduce into the record any documentary evidence which tends to establish the ultimate facts involved in the controlling issue which we will pass upon.

Concerning Exhibit 1, Hershey, the appellant, testified that around June 1, 1924, before the beginning of production of the regular equipment locks for the Rickenbacker Motor Company, to whom his company had sold automobile locks, and later sold other locks, a Mr. Gollwitzer, one of Hershey's mechanical engineers, built the sample lock, Exhibit 1, under his, Hershey's, direction. He stated that this lock was built by using the body of a regular equipment lock, which was modified to some extent, and that this sample lock was tested on a dummy steering post with wires leading to an electric switch and, as installed, operated the same as on an automobile, and that this Exhibit 1, the construction of which corresponds to the count at issue, was sent to a Mr. Hunt, Hershey's sales agent, who showed it to Rickenbacker around June 1, 1924.

If the above statement of facts on the part of Hershey was properly supported by the testimony, the question as to whether the invention had been properly tested would require consideration. But, in view of our conclusions, it is not necessary to pass upon this question, since we are of the opinion that the evidence as a whole is not sufficient to establish that Exhibit 1 was constructed prior to Harris' filing date.

For corroboration of Hershey's testimony, Gollwitzer stated that he did most of the work on Exhibit 1 and that it required one day to produce it, and that it was tested the day after it was made in the early part of June, 1924. He fixes the time by reference to a trip made to his dentist on the day it was constructed. He stated that within a month or two of this time a dozen different samples of locks embodying a switch turnoff feature were produced. He testified that from November, 1923, to November, 1924, he made hundreds of different locks.

We, like the tribunals below, are not satisfied that Gollwitzer would be apt to remember, after eight years, the time when some particular one of the hundreds of locks was made in view of the fact that there was no documentary evidence of any kind, or circumstance other than the trip to the dentist, to aid his memory. His trip to the dentist does not add much strength to his testimony, because it was shown that Gollwitzer had 18 appointments with the dentist between May 21, 1924, and September 2, 1925.

The appellant also offered the testimony of Edwin R. Evans, chief engineer for the Rickenbacker Motor Company; of J. C. Hershey, president of the Hershey Company; of Byron F. Everitt, president and general manager of the Rickenbacker Motor Company; of George H. Hunt, Hershey's sales agent; of Roy M. Hood, general purchasing agent for the Rickenbacker Motor Company; and of others in an attempt to corroborate the appellant's Hershey's, testimony. As said before, this testimony is fully set out and discussed by the Patent Office tribunals, and the inconsistencies or weaknesses thereof are pointed out and commented upon in a manner similar to the discussion of Gollwitzer's testimony, above set out. We agree with the views expressed as to the effect of such testimony, and we will not repeat the same here.

Appellee introduced the testimony of numerous witnesses to contradict or weaken the effect of the testimony of some of appellant's witnesses. In a number of respects this testimony does contradict and weaken the testimony which appellant submitted. It is true that there are defects and some inconsistencies in appellee's rebuttal testimony. Nevertheless, as a whole, it has the effect of weakening the evidence submitted by appellant.

It is obvious from a reading of the testimony of appellant and his witnesses, and a consideration of the lock exhibits to which the testimony referred, that there is considerable indefiniteness or lack of

clearness in the statements of appellant's witnesses, especially as to the particular locks or the structures of the particular locks to which the testimony related.

It has been pointed out that no application was filed by appellant on the lock involved in the count here until a year after the alleged construction of the same, although other applications on other locks were filed in the meantime.

Both tribunals of the Patent Office have concurred in finding that appellant's testimony is not sufficient to satisfactorily establish that any lock embodying the features of the count at bar was constructed by appellant prior to appellee's filing date, and that since such a structure was not shown to have been made as claimed by Hershey, and there being no other evidence of a conception by appellant, there is no evidence of a conception of the structure involved in the count on the part of Hershey prior to Harris' filing date.

The rule as to the effect to be given to concurring decisions of the Patent Office tribunals on questions of fact which must be determined from the testimony is well settled, and needs no extended citation or discussion here. In Jardine et al. v. Long, 58 F.(2d) 836, 19 C. C. P. A. (Patents) 1243, this court said:

"It is well understood that this court follows the practice common to all appellate tribunals in cases such as this, and refuses to disturb decisions of the tribunals below upon findings of fact, unless fully convinced that such findings are not in accord with the weight of the evidence when such evidence is fairly weighed and construed.

"It is also realized, we are sure, that where it appears that the tribunals originally hearing the case made a careful and painstaking scrutiny of the evidence, and that the intermediate appellate tribunal examined and independently weighed the same testimony, with the result that both reached the same conclusion, for the same reasons, then the burden of one appealing to convince us of error in their decisions is very great."

Under such circumstances as are at bar, the rule is also stated as follows: "The tribunals of the Patent Office having concurred in their findings of fact, we must accept such findings unless they are manifestly wrong." Bennett v. Fitzgerald, 48

F.(2d) 917, 918, 18 C. C. P. A. (Patents) 1201.

We have carefully considered all of appellant's proofs and the extended argument of his counsel, as well as the careful analysis by the tribunals below of the record facts. It has not been shown to us that the finding of the Board that the testimony failed to corroborate the date when Hershey's Exhibit 1 was made or that Hershey has failed to prove conception of the invention prior to the filing date of the senior party was manifestly wrong. In this view of the case, the decision of the Board of Appeals, affirming that of the Examiner of Interferences, awarding priority to the senior party, Harris, should be and is affirmed.

Affirmed.